# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

======================

## ON MOTION FOR REHEARING

======================

## NO. 03-05-00716-CR

**Wendy Winborn, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NUMBER 2 OF HAYS COUNTY
### NO. 75862, HONORABLE LINDA ANN RODRIGUEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment issued on October 12, 2006, are withdrawn, and the following opinion is substituted.

This case concerns whether a phoned-in tip from an identified motorist was sufficiently reliable to justify an investigative stop of appellant Wendy Winborn for driving while intoxicated. The investigative stop resulted in Winborn's arrest and ultimately, her conviction for driving while intoxicated. We affirm the conviction.

On October 9, 2004, Corporal Kathy Anderson of the San Marcos Police Department was on patrol in the San Marcos area when she received a call from dispatch notifying her of a possible intoxicated driver.[1] The call from dispatch was based on a phoned-in tip from Jerry

---

[1] At the hearing on the motion to suppress, Corporal Anderson gave the following testimony:

[Prosecutor]: Okay. And it— it [Anderson's report] says here that you were notified of a possible intoxicated driver.

[Anderson]: Yes.

Hoffman, a truck driver who was driving south on I-35. The information relayed from dispatch to Corporal Anderson was that Hoffman had been following a vehicle since Austin and that the driver of the vehicle was failing to maintain a single lane. Hoffman reported the vehicle's license plate number and left his name, telephone number, and address with dispatch. After Anderson received this call, she got on I-35 going south and, within a few minutes, identified Winborn's vehicle as the vehicle reported by Hoffman because "it was the same license plate."

Corporal Anderson followed Winborn's vehicle for approximately two miles without activating the overhead lights on her patrol car. She testified that, other than observing Winborn's car "going back and forth within its lane of traffic," she did not observe "any traffic infraction" during this time. Once Corporal Anderson activated her overhead lights, Winborn's vehicle "went over into the left lane with two tires on the left side." According to Anderson, Winborn then made a lane change to the right lane using her blinker but "then again [Winborn] went over into the center lane with two tires." After driving approximately one mile further, Winborn stopped her vehicle and was arrested by Corporal Anderson for driving while intoxicated.

Winborn was charged by information with driving while intoxicated. In a pretrial motion to suppress, Winborn argued that the evidence supporting the DWI charge was discovered during an improper investigative stop. After conducting a hearing on the motion, during which Corporal Anderson testified, the trial court overruled the motion to suppress. At trial, Winborn entered a plea of nolo contendere to the offense of driving while intoxicated, and the trial court assessed punishment at 180 days in prison, probated for 18 months with conditions of community supervision, and a $600 fine.

2

In one issue on appeal, Winborn contends that the trial court erred in overruling her motion to suppress because Hoffman's tip was not sufficiently reliable to provide Corporal Anderson with reasonable suspicion to justify an investigative stop of her vehicle.

Questions of reasonable suspicion and probable cause are reviewed de novo. *See Guzman v. State*, 955 S.W.2d 85, 87-88 (Tex. Crim. App. 1997); *State v. Garcia*, 25 S.W.3d 908, 911 (Tex. App.—Houston [14th Dist.] 2000, no pet.). When hearing a motion to suppress, the trial court is the sole trier of fact, and, accordingly, the judge may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, no findings of fact are filed, we must view the evidence in the light most favorable to the ruling and sustain the decision if it is correct on any applicable theory of law. *Id*. at 855-56.

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his or her experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To justify the investigative detention, the individual officer must have a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *State v. Fudge*, 42 S.W.3d 226, 229 (Tex. App.—Austin 2001, no pet.) (quoting *Terry*, 392 U.S. at 21-22).

The reasonableness of an investigative detention turns on the totality of circumstances in each case. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). When the police receive information from an informant, the totality of the circumstances includes the veracity and

reliability of the informant and the informant's information, as well as the basis for the informant's knowledge. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

An anonymous tip alone will rarely establish the level of reasonable suspicion required to justify a detention. *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *Alabama v. White*, 496 U.S. 325, 329 (1990). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.).

Several Texas courts of appeals have held that a tip from an informant exhibits sufficient indicia of reliability to justify a detention when the informant has placed himself in a position to be easily identified and held responsible for the information provided. *See*, *e.g.*, *Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (upholding detention based on tow truck driver's call to dispatch reporting erratic driving because tow truck driver was in traceable vehicle and was following defendant); *Fudge*, 42 S.W.3d at 232 (upholding detention based solely on cab driver's unsolicited in-person report to officer about erratic driving); *Garcia*, 25 S.W.3d at 913-14 (holding that reasonable suspicion existed after individual "flagged down" officer in parking lot and personally reported incident, even though informant later left scene without identifying himself); *State v. Stolte*, 991 S.W.2d 336, 342-43 (Tex. App.—Fort Worth 1999, no pet.) (upholding investigative detention based on information from unidentified person relayed to investigating officer by police dispatcher because informant followed vehicle and waited at scene when stop was made); *State v. Sailo*, 910 S.W.2d 184, 189 (Tex. App.—Fort Worth 1995, pet. ref'd) (upholding stop based on report personally given to officer even though informant drove away before being identified).

The State contends that Hoffman's unsolicited, phoned-in tip to the police was sufficiently reliable to justify the investigative detention in this case because he left his name, phone number, and address with dispatch. Winborn, on the other hand, argues that the tip was not sufficiently reliable because it was given to the police over the phone rather than in a face-to-face, in-person manner.

Several cases, including *Fudge*, *Garcia*, and *Sailo*, have held that an informant's unsolicited tip was reliable because the informant gave the information to the police in a "face-to-face manner" that also revealed information about the informant, including identity. *See Fudge*, 42 S.W.3d at 232; *Garcia*, 25 S.W.3d at 913; *Sailo*, 910 S.W.2d at 188. In each of these cases, the informant transmitted the information in-person. However, the in-person aspect of the delivery of the tip is not the key to results in these cases. The central point is the credibility and reliability to be given the information delivered by the informant. *See Gates*, 462 U.S. at 230-31 (1983). This credibility and reliability can be enhanced when something about the informant is known, such as the informant's identity or basis for having the information conveyed. While such information can be effectively conveyed in-person, such face-to-face contact is not the only method by which police can receive credible and reliable tips.

An officer may rely upon information received through an informant, rather than on his or her direct observation, so long as the officer confirms enough facts so that he or she may reasonably conclude that the information provided is reliable and a detention is justified. *See White*, 496 U.S. at 330-31. This does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005) (citing *Adams v. Williams*,

5

407 U.S. 143, 147 (1972)).  Rather, it means that the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified.  *Brother*, 166 S.W.3d at 259.  As discussed above, Hoffman's tip contained indicia of reliability because he placed himself in a position to be easily identified and held responsible for the information provided.  Additionally, several minutes after dispatch contacted Corporal Anderson relaying Hoffman's tip, Anderson identified a vehicle in the same location and with the same license plate number described by Hoffman.  When Corporal Anderson confirmed that Winborn's vehicle was located where Hoffman indicated and matched the description given, she was justified in initiating an investigative stop.  *See Hime v. State*, 998 S.W.2d 893, 896 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

The facts of this case are nearly identical to the facts presented in *Hime*.  *See id.*  In that case, an informant called the police to report her observation of an individual's reckless driving.  *See id.* at 895.  The informant described the suspect's vehicle, erratic driving, and location, and gave her name to dispatch.  *Id.*  After the police identified the vehicle matching Skelton's description in the location described by Skelton, they stopped the vehicle and arrested the driver for driving while intoxicated.  *Id.*  Although Skelton did not contact the police in a face-to-face manner, "[b]ecause Skelton identified herself by name to the police dispatch operator, she was not an anonymous informant."  *Id.*  As a result, the court held that Skelton's tip to the police, plus corroboration by the police of the information relayed by Skelton, justified the investigatory stop.  *See id.* at 896.

Winborn contends that her case is similar to *Davis v. State*, 989 S.W.2d 859, 861 (Tex. App.—Austin 1999, pet. ref'd), in which this Court held that an anonymous tip that served as the sole basis for a detention was not sufficient to create reasonable suspicion.  In that case, an

6

officer received a report of reckless driving from dispatch, including the vehicle's description and location, and a statement that three white males inside the vehicle were "possibly smoking marijuana." *Id.* The informant did not leave a name or address with the dispatcher, and no one stopped at the scene claiming to be the informant. *Id*.

We conclude that the facts of this case are distinguishable from the situation in *Davis* and are, instead, more closely analogous to the facts presented in *Hime.* While the informant in *Davis* did not volunteer identifying information and was never identified, the informant in this case identified himself and put himself in a position to be held responsible for the information provided. Corporal Anderson testified at the suppression hearing that Hoffman left his name and address with dispatch "in case [the police] needed to make contact with him." As a result, Hoffman was not an anonymous informer as in *Davis. See Hime*, 998 S.W.2d at 895. His phoned-in tip contained indicia of reliability similar to those bolstering reliability of a tip delivered by an informant who flags down the police and delivers the information in person. These indicia of reliability, when combined with Corporal Anderson's observation of Winborn's vehicle consistent with Hoffman's description, and viewed in the totality of the circumstances, provided sufficient reasonable suspicion to justify the investigative stop of Winborn's vehicle. *See id.* at 896.

Having overruled Winborn's sole issue on appeal, we affirm.

_____
G. Alan Waldrop, Justice

Before Justices Patterson, Puryear and Waldrop

Affirmed on Motion for Rehearing

Filed: June 13, 2007

Do Not Publish

7