Affirmed and Memorandum Opinion filed July 31, 2008








Affirmed and Memorandum Opinion filed July 31, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00890-CR

NO. 14-07-00891-CR

____________

 

AMANDA RENE WILSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 13

Harris County, Texas

Trial Court Cause Nos. 1445618
& 1445619

 



 

M E M O R A N D U M  O P I N I O N








The trial court found appellant, Amanda Rene Wilson, guilty
of the misdemeanor offenses of possession of marijuana and possession of a
controlled substance.  See Tex. Health & Safety Code Ann. '' 481.121,
481.104(a)(8), 481.117(a)B(b) (Vernon 2003).  The trial court
sentenced appellant to 180 days= confinement in the Harris County jail,
probated for one year for the possession-of-marijuana conviction, and three
days confinement in the Harris County jail and an $800 fine for the
possession-of-a-controlled-substance conviction.  Appellant appeals her convictions
in one point of error.  Appellant asserts the trial court abused its discretion
by denying her motion to suppress.  Finding no error, we affirm. 

Factual and Procedural Background

On April 4, 2007, Officer Justin Coppedge of the Pasadena
Police Department initially arrested appellant for suspicion of driving while
intoxicated (DWI), and upon a search of appellant=s vehicle, Officer
Coppedge discovered drugs.  Ultimately, appellant was charged with the misdemeanor
offenses of possession of marijuana and possession of a controlled substance. 
Appellant filed a motion to suppress any statements obtained or tangible
evidence seized in connection with the case.  Appellant argued the Pasadena
Police Department violated her constitutional and statutory rights under the
Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States
Constitution; article I, sections 9, 10, and 19 of the Texas Constitution; and
article 38.23 of the Texas Code of Criminal Procedure.  According to appellant,
Officer Coppedge arrested appellant without a lawful warrant, probable cause,
or other lawful authority.      








During the suppression hearing, Officer Coppedge was the
only witness to testify.  According to Officer Coppedge, an informant called
the Pasadena Police Department dispatch and reported an erratic driver and
possible DWI heading westbound near the intersection of Fairmont and Preston. 
The informant described the vehicle as a black Hyundai Elantra and provided the
vehicle=s license plate
number.  After receiving the call, dispatch relayed the information to Officer
Coppedge.[1] 
In response to the possible DWI, Officer Coppedge got in his patrol car and
proceeded toward the west end of the city.  In addition, Officer Coppedge asked
dispatch to run the license plate number and determine the address of the car=s registration. 
Dispatch informed Officer Coppedge the address registered for that license
plate number was 10219 Bessemer; however, dispatch also advised Officer
Coppedge to disregard the call because the address was located within Houston
city limits.  Officer Coppedge testified he proceeded to the address despite
dispatch=s advice.[2]








Officer Coppedge testified he arrived at 10219 Bessemer
approximately four minutes after dispatch received the informant=s call.  Upon
arrival, Officer Coppedge saw a black Hyundai Elantra, with the license plate
number the informant provided, parked in the driveway.  From his patrol car,
Officer Coppedge could see an occupant in the driver=s seat of the
car.  Officer Coppedge testified he was concerned because the individual was
still in the car and had an opportunity to operate the vehicle again, so
Officer Coppedge approached the car.  As Officer Coppedge approached, he
touched the car=s hood and noticed it was still warm,
which was consistent with the car having been driven recently.  Officer
Coppedge identified the occupant as a white female.  Officer Coppedge also
noticed the female was slumped over the steering wheel, the keys were in the
ignition, the car was in drive, and the engine of the car was turned off. 
Officer Coppedge testified appellant was the occupant of the car. 

According to Officer Coppedge, in an attempt to wake
appellant up, he tapped on the driver=s-side window and
ended up opening the door.  Officer Coppedge testified appellant eventually
responded to the tapping.  After getting appellant=s attention,
Officer Coppedge asked appellant if she had been drinking any alcoholic
beverages, and she responded A[y]es, sir, today.@  Officer Coppedge
also asked appellant if she had any physical or mental impairments or if she
was injured, and appellant said no.  Officer Coppedge testified that, from this
interaction, he noticed a very strong odor of alcohol emitting from appellant=s breath.  Officer
Coppedge further testified appellant got out of her car to perform the
standardized field sobriety tests.  As appellant was exiting the car, Officer
Coppedge noticed appellant was unsteady on her feet.  According to Officer
Coppedge, appellant performed poorly on all the field sobriety tests.  Based
upon these observations, Officer Coppedge felt appellant was a danger to
herself and others, so he arrested appellant for suspicion of DWI.








In order to identify appellant, Officer Coppedge asked
appellant if she had a driver=s license.  Appellant told Officer
Coppedge her driver=s license was in her purse, and she gave
Officer Coppedge consent to retrieve her license.  Officer Coppedge testified
he did not allow appellant to retrieve her license for safety purposes.  As
Officer Coppedge reached inside appellant=s car to retrieve
the license, he noticed, in plain view, a clear plastic bag filled with
marijuana sitting in the open center console.  Upon further search of the
vehicle, Officer Coppedge discovered a second bag of marijuana and thirteen and
a half white oblong pills, later identified as Darvocet, in the same console. 
According to Officer Coppedge, he then went back to his patrol car and found
the informant=s name and telephone number on his call screen. 
Officer Coppedge called the informant to see if he could positively identify
the driver of the black Hyundai Elantra; however, the informant was unable to
describe either the gender or race of the driver.

On cross-examination, Officer Coppedge admitted he did not
see anyone driving the black Hyundai Elantra, he did not know whether the
driver was male or female, and he did not personally observe any traffic
violations.  Officer Coppedge admitted it was not illegal for a car to be
parked in a driveway or for a person to be slumped over the wheel of a parked
car.  In addition, Officer Coppedge admitted that he did not write the
informant=s name or telephone number in his report, he did not
include in his report that the informant told dispatch he was following an
erratic driver, and he did not know the informant=s credibility or
reliability.  After Officer Coppedge=s testimony,
appellant re-urged her motion to suppress and also argued Officer Coppedge did
not have any reasonable suspicion to initially detain appellant in her
driveway; thus, appellant argued the arrest was unlawful. 

The trial court denied appellant=s motion to
suppress, and appellant pleaded nolo contendere to each offense.  The trial
court found appellant guilty of the misdemeanor offenses of possession of
marijuana and possession of a controlled substance.  The trial court sentenced
appellant to 180 days= confinement in the Harris County jail,
probated for one year for the possession-of-marijuana conviction, and three
days confinement in the Harris County jail and an $800 fine for the
possession-of-a-controlled-substance conviction.  Appellant subsequently
requested the trial court to make findings of fact and conclusions of law. 
Pursuant to appellant=s request, the trial court filed its
Findings of Fact and Conclusions of Law on January 11, 2008.  This appeal
followed.

 Discussion

A.      Did the
Trial Court Err in Denying Appellant=s Motion to
Suppress?








In her sole point of error, appellant argues the trial
court erred in denying her motion to suppress because appellant=s rights under the
United States and Texas Constitutions were violated.[3] 
During the suppression hearing, the State admitted Officer Coppedge conducted a
warrantless arrest and search, and the State recognized it bore the burden of
establishing the reasonableness of Officer Coppedge=s actions.  See
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (stating the
burden is on the State to elicit testimony showing sufficient facts to create
reasonable suspicion).  According to appellant, Officer Coppedge detained
appellant before arresting her and the State failed to prove Officer Coppedge=s detention was
based on reasonable suspicion.  Appellant argues Officer Coppedge did not have
sufficient specific, articulable facts to believe a crime had been or was about
to be committed when he arrived at appellant=s residence. 
According to appellant, the only evidence the State presented was an opinion by
the informant and mere suspicion by Officer Coppedge.  Appellant argues since
the evidence indicates Officer Coppedge=s actions were not
justified at the inception of the detention, the evidence obtained subsequent
to the detention was inadmissible.  In response, the State argues Officer
Coppedge had sufficient specific, articulable facts to justify appellant=s detention based
on the information provided by the citizen-informant and Officer Coppedge=s corroborative
observations.

1.       Standard
of Review








We review a trial court's ruling on a motion to suppress under a bifurcated
standard of review, giving almost total deference to the
trial court's findings of historical fact and reviewing de novo the
trial court=s application of the law.  See Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  Questions of reasonable suspicion
and probable cause are reviewed de novo on appeal.  State v. Garcia,
25 S.W.3d 908, 911 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  The
trial judge is the exclusive trier of fact and judge of the credibility of the
witnesses and the weight to be given to their testimony at the suppression
hearing.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  As
the trier of fact, the trial court is free to believe or disbelieve all or any
part of a witness=s testimony, even if the testimony is
uncontroverted.  Id.; Marsh v. State, 140 S.W.3d 901, 905 (Tex.
App.CHouston [14th
Dist.] 2004, pet. ref=d).  When reviewing the trial court=s ruling on a
motion to suppress, we must view the evidence in the light most favorable to
the trial court=s ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006).  When, as here, the trial court makes
explicit fact findings, we determine whether the evidence, when viewed in the
light most favorable to the trial court=s ruling, supports
these fact findings.  Id.  We then review the trial court=s legal ruling de
novo unless its explicit fact findings that are supported by the record are
also dispositive of the legal ruling.  Id.  When the written findings of
fact do not cover every contested matter, facts that support the ruling may be
inferred.  See Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App.
2005).  We must uphold the trial court=s ruling if it is
supported by the record and correct under any theory of law applicable to the
case, even if the trial court gave the wrong reason for its ruling.  Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

2.       Applicable
LawBReasonable
Suspicion








The Fourth Amendment of the United States Constitution and
article I, section 9, of the Texas Constitution require probable cause to
legally conduct a search or seizure.  See U.S. Const. amend. IV; Tex. Const. art. I, ' 9.  However,
police officers may stop and briefly detain persons suspected of criminal
activity on less information than is required for probable cause.  See Terry
v. Ohio, 392 U.S. 1, 21B22, 88 S. Ct. 1868, 1879B80, 20 L. Ed. 2d
889 (1968); Garza v. State, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989) (AIt is clear that
circumstances short of probable cause may justify temporary detention for
purposes of investigation.@).  An investigative detention occurs when
a person is confronted by a police officer who, under a display of law
enforcement authority, temporarily detains the person for purposes of an
investigation.  Garcia, 25 S.W.3d at 911.  An officer conducts a lawful
temporary detention when the officer has reasonable suspicion to believe an
individual is violating the law.  Ford v. State, 158 S.W.3d 488, 492
(Tex. Crim. App. 2005).  Reasonable suspicion requires the officer to have
specific, articulable facts which, in light of his experience and personal
knowledge, together with rational inferences from those facts, would lead the
officer to reasonably conclude a particular person actually is, has been, or
soon will be engaged in criminal activity.  See id.; Garza, 771
S.W.2d at 558.  The facts and circumstances that may provide a reasonable
suspicion of criminal activity need not themselves be criminal in nature, but
may include facts that in some way would increase the likelihood of the
presence or occurrence of criminal activity.  See Crockett v. State, 803
S.W.2d 308, 311 (Tex. Crim. App. 1991).








The existence of reasonable suspicion is an objective
standard that disregards any subjective intent of the officer making the stop
and looks solely to whether an objective basis for the stop exists.  Ford,
158 S.W.3d at 492.  An officer may not detain a person without a showing of
reasonable suspicionCa particularized and objective basis for
suspecting the particular person of criminal activity.  Klare v. State,
76 S.W.3d 68, 72 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  The detaining
officer must point to something that would lead a reasonable person to believe
the person being detained was engaged in a criminal act.  Id. at 73. 
These specific, articulable facts must amount to more than a mere hunch or
suspicion.  Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)
(quoting Garza, 771 S.W.2d at 558).  The validity of a seizure is a dual
inquiry: whether the officer=s action was justified at its inception
and whether it was reasonably related in scope to the circumstances that
justify the interference in the first place.  Klare, 76 S.W.3d at 73.  A
reasonable-suspicion determination is made by considering the totality of the
circumstances.  Ford, 158 S.W.3d at 492B93.  When the
initial detention is unlawful, any evidence seized subsequent to the detention
is inadmissible.  Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App.
1994) (en banc). 

3.       Analysis








In this case, Officer Coppedge did not personally observe
appellant commit any wrongdoing.  Officer Coppedge=s investigation
into a possible DWI began because a citizen-informant called the Pasadena
Police Department dispatch and reported an erratic driver and possible DWI. 
However, reasonable suspicion need not arise from the officer=s personal
observation, but may be supplied by information acquired from another person.  Brother
v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).  Texas courts have
consistently held a stop based on facts supplied by a citizen-eyewitness, which
are adequately corroborated by the arresting officer, does not run afoul of the
Fourth Amendment.  Id. at 259; see Garcia, 25 S.W.3d at 913B14 (holding the
reliability of the informant=s tip, combined with the officer=s subsequent
corroboration of details, provided reasonable suspicion for investigative
detention); Hime v. State, 998 S.W.2d 893, 895B96 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d) (holding a stop for DWI investigation
was reasonable based on tip from eyewitness who provided name to police).  A
tip by an unnamed informant of undisclosed reliability may justify the
initiation of an investigation; however, standing alone, the tip rarely will
establish the requisite level of reasonable suspicion necessary to justify an
investigative detention.  Florida v. J.L., 529 U.S. 266, 269, 120 S. Ct.
1375, 1378, 146 L. Ed. 2d 254 (2000); see Garcia v. State, 3 S.W.3d 227,
234 (Tex. App.CHouston [14th Dist.] 1999), aff=d, 43 S.W.3d 527
(Tex. Crim. App. 2001).  When an investigative detention is based solely on an
anonymous tip, the court often has no way of evaluating the reliability of the
information from the anonymous source.  Garcia, 3 S.W.3d at 235. 
Consequently, there must be some further indicia of reliabilityCadditional facts
from which a police officer may reasonably conclude the tip is reliable and a
detention is justified.  Id.  If a tip has a relatively low degree of
reliability, more information will be required to establish the requisite
quantum of suspicion than would be required if the tip was more reliable.  Alabama
v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d. 301
(1990).  This is so because, in an anonymous tip situation, reasonable
suspicion is dependent upon both the content of the information possessed by
the police and its degree of reliability.  Id.  

Corroboration by the law enforcement officer of any
information relayed by the informant may increase the reliability of the
information.  State v. Stolte, 991 S.W.2d 336, 341 (Tex. App.CFort Worth 1999,
no pet.); see State v. Sailo, 910 S.W.2d 184, 188 (Tex. App.CFort Worth 1995,
pet. ref=d).  However,
corroboration in this sense refers to whether the police officer, in light of
the circumstances, confirms enough facts to reasonably conclude the information
given to him is reliable and a temporary detention is thus justified.  Hime,
998 S.W.2d at 896.  

Where the reliability of the informant is increased, less
corroboration is necessary.  Stolte, 991 S.W.2d at 341; see White,
496 U.S. at 330, 110 S. Ct. at 2416.  A detailed description of the wrongdoing,
along with a statement the event was observed firsthand, entitles an informant=s tip to greater
weight.  Illinois v. Gates, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330, 76
L. Ed. 2d 527 (1983).  A tip also deserves greater weight if the person put
himself in a position to be held accountable for his intervention.  See
Garcia, 25 S.W.3d at 913.  Furthermore, a person who is not connected with
the police or who is not a paid informant is considered inherently trustworthy
when he advises the police he suspects criminal activity has occurred or is
occurring.  Id.        








In this case, the citizen-informant called dispatch and
reported an erratic driver and possible DWI.  The informant provided a location
of the car and the direction in which the car was heading.  The informant also
provided a detailed description of the car and the license plate number. 
Furthermore, the citizen-informant was not anonymous.  Officer Coppedge
testified that, after placing appellant under arrest and discovering the drugs,
he called the informant, which establishes the informant provided dispatch with
his name and telephone number.  Considering all of these facts, we find the
informant, who was in no way connected with the police, sufficiently reliable
because he called the police to give information about a crime under
circumstances that would render him accountable for his intervention.  See
id. (holding an anonymous citizen-informant sufficiently reliable because
the informant provided the information face-to-face); Hime, 998 S.W.2d
at 895B96 (finding an
informant reliable because she provided the police with her name and gave a
detailed description of the vehicle and the wrongdoing); Hawes v. State,
125 S.W.3d 535, 539B40 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (finding an anonymous informant reliable because
informant was in a position to be identified by his presence in a tow truck,
which was a readily traceable vehicle, and was following the defendant).  Therefore,
in this case, the question becomes whether, in the totality of the
circumstances and in light of his experience and knowledge, Office Coppedge
corroborated enough of the information the citizen-informant provided, giving
the informant=s information the weight it deserves in light of its
indicia of reliability.  If so, the investigative detention was justified.  








Here, after receiving the informant=s information from
dispatch, Officer Coppedge asked dispatch for the address to which the car was
registered.  Officer Coppedge noticed the direction of travel provided by the
informant was consistent with travel in the direction of the address, so he
proceeded to the residence.  Officer Coppedge testified he arrived at the
address approximately four minutes after dispatch received the informant=s call.  Upon
arrival, Officer Coppedge observed the car described by the informant parked in
the driveway.  From his patrol car, Officer Coppedge could see an occupant in
the driver=s seat of the car.  According to Officer Coppedge,
since the individual was still in the car, he was concerned the individual
might try to operate the vehicle again, so he approached the car.  As Officer
Coppedge approached, he touched the hood and noticed it was still warm, which
was consistent with the car having been driven recently.  Officer Coppedge also
noticed the female was slumped over the steering wheel, the keys were still in
the ignition, the car was in drive, and the engine of the car was turned off. 
In an attempt to wake appellant up, Officer Coppedge tapped on the driver=s-side window, but
appellant did not immediately respond.  Based on our review of the totality of
the circumstances, in light of Officer Coppedge=s experience and
knowledge, and giving the informant=s information the
weight it deserves in light of its indicia of reliability, we find Officer
Coppedge corroborated enough facts to justify an investigative detention.[4] 









We disagree with appellant that the facts presented to the
trial court were opinions by the informant and mere suspicion by Officer
Coppedge.  Instead, we find the informant was sufficiently reliable and Officer
Coppedge corroborated enough facts to justify the detention.  See Garcia,
25 S.W.3d at 913B14 (holding an informant=s information that
he saw under-aged individuals retrieving alcohol from a car in a store parking
lot was sufficient to establish reasonable suspicion when corroborated with
additional facts); Hime, 998 S.W.2d at 895B96 (upholding a
stop based on a call from a citizen who observed the defendant driving
erratically).  Appellant also attempts to compare this case with Ford v.
State.  In Ford, the Court of Criminal Appeals held the
investigative detention unlawful because the State failed to produce specific,
articulable facts to justify the detention.  Ford, 158 S.W.3d at 493. 
The only evidence presented in Ford was the officer=s testimony that
Ford was following too close, and the Court determined this testimony was too
conclusory to establish reasonable suspicion.  Id.  Ford is
distinguishable from this case considering the information provided by the
reliable informant and the facts corroborated by Officer Coppedge.  Therefore,
we conclude the initial detention was lawful and the evidence seized subsequent
to the detention was admissible.  We overrule appellant=s sole point of
error.       

Conclusion

Having overruled appellant=s sole issue on
appeal, we affirm the trial court=s judgment.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed July 31, 2008.

Panel consists of Justices Yates,
Anderson, and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).    

 









[1]  Officer Coppedge testified that, at the time of the hearing, he had
served on the Pasadena Police Department for six years and had been assigned to
the DWI task force for over two years.  He also testified he had received
specialized training in sobriety evaluation of intoxicated drivers.  





[2]  During the suppression hearing, appellant argued
Officer Coppedge did not have authority to arrest appellant because Officer
Coppedge was outside of his jurisdiction.  In its Findings of Fact and
Conclusions of Law, the trial court found even though Officer Coppedge was
outside the city limits of Pasadena, he still had authority to arrest appellant
for the drugs and narcotics since the offenses were committed in his presence. 
Appellant does not challenge this finding on appeal.  However, even if
appellant had properly challenged the issue of Officer Coppedge=s jurisdiction, we conclude Officer Coppedge=s actions were proper.  Because, as discussed below,
Officer Coppedge had reasonable suspicion to believe appellant was driving
while intoxicated, which arose after he sufficiently corroborated the informant=s information, he had authority under article 14.03 of
the Texas Code of Criminal Procedure to detain and subsequently arrest
appellant outside the Pasadena city limits.  Tex. Code Crim. Proc. Ann. art.
14.03(d) (Vernon Supp. 2007) (AA peace officer
who is outside his jurisdiction may arrest, without warrant, a person who
commits an offense within the officer=s
presence or view, if the offense is . . . , a violation of Chapter 42 or 49,
Penal Code [which includes driving while intoxicated] . . . .@); see Brother v. State, 166 S.W.3d 255, 257B60 (Tex. Crim. App. 2005) (holding the factual basis
for an investigative detention need not arise from the officer=s personal observation but may be supplied by
information acquired from another person, and holding a municipal police
officer has the authority to stop a driver outside the city limits under
article 14.03 if the officer has reasonable suspicion the driver is driving
while intoxicated); State v. Purdy, 244 S.W.3d 591, 594 (Tex. App.CDallas 2008, pet. struck) (holding article 14.03(d)
and article 14.03(g) authorize a municipal police officer to stop a driver
outside of the city limits if the officer has reasonable suspicion the driver
is driving while intoxicated); Mitchell v. State, 187 S.W.3d 113, 116
(Tex. App.CWaco 2006, pet. ref=d)
(holding the officer was authorized to stop the defendant outside the city
limits under article 14.03 because the officer had reasonable suspicion the
defendant was intoxicated based on the unidentified citizen=s report and the officer=s own observations).





[3]  Although appellant argues Officer Coppedge violated
her rights under both the United States Constitution and the Texas
Constitution, she makes no distinction between her rights under each claim. 
Appellant has failed to provide any argument or authority that the Texas
Constitution provides her greater protection than the United States
Constitution.  Therefore, we will analyze appellant=s issue using federal constitutional principles.  See
Johnson v. State, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992) (declining to
address appellant=s arguments regarding his state constitutional rights
when appellant did not make a distinction between the United States
Constitution and the Texas Constitution). 





[4]  In the trial court=s Findings of Fact and Conclusions of Law, it found Officer Coppedge
had reasonable suspicion to detain appellant partly based on Officer Coppedge=s detection of a strong odor of alcohol, the fact
appellant admitted to drinking, the fact appellant was unsteady on her feet,
and the fact appellant failed the field sobriety tests administered by Officer
Coppedge.  Appellant argues the trial court=s
conclusion that Officer Coppedge had reasonable suspicion was erroneous because
its determination was partially based on facts obtained by Officer Coppedge
after appellant=s detention.  According to appellant, Officer Coppedge
tapped on appellant=s car window and immediately asked her to exit the
vehicle.  Appellant argues she was detained at this point; therefore, the facts
recited above were obtained by Officer Coppedge after appellant=s detention and cannot be used to support a
determination of reasonable suspicion.  The State, on the other hand, argues
Officer Coppedge tapped on appellant=s
window, and then there was a conversation between the two while appellant was
still in her vehicle.  According to the State, during this conversation,
Officer Coppedge smelled alcohol and appellant admitted she had been drinking. 
Officer Coppedge then asked appellant to exit her vehicle, at which point she 
was detained. While the record may support either version of the events leading
up to appellant=s arrest, we find this information unnecessary to our
conclusion.  We conclude Officer Coppedge had reasonable suspicion to detain
appellant before he tapped on appellant=s
car window, considering Officer Coppedge=s
experience and specialized training, the informant=s information, the short amount of time between the
informant=s call and Officer Coppedge=s arrival, the fact the occupant was slumped over the
steering wheel, and the fact the keys were in the ignition, the car was in
drive, and the engine was turned off.