ACCEPTED
01-15-00512-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/30/2015 3:46:09 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00512-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

10/30/2015 3:46:09 PM

CHRISTOPHER A. PRINE
Clerk

————————◆————————

### No. 1980492

In the County Criminal Court at Law #3
Of Harris County, Texas

————————◆————————

## TAYLOR MARTIN KORB

*Appellant*
V.
## THE STATE OF TEXAS

*Appellee*

————————◆————————

## STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ALAN CURRY**
State Bar No: 05263700
Assistant District Attorney
Harris County, Texas

**JESSICA JUNEK**
Appellate Intern

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
FAX No.: 713/755-5809
curry_alan@dao.hctx.net

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** – District Attorney of Harris County

**Alan Curry** – Assistant District Attorney on appeal

**Napoleon Stewart** – Assistant District Attorney at trial

**Molly Wurzer** – Assistant District Attorney at trial

*Appellant or Criminal Defendant:*

**Taylor Martin Korb**

*Counsel for Appellant:*

**Dan Krieger** – Counsel on appeal and at trial

**Christopher Morton** – Counsel at trial

*Trial Judge:*

**Honorable Natalie Fleming** – Presiding judge of the CCCL#3

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ..................................................... ii

IDENTIFICATION OF THE PARTIES ........................................................................ ii

TABLE OF CONTENTS ............................................................................................. iii

TABLE OF AUTHORITIES ......................................................................................... v

TO THE HONORABLE COURT OF APPEALS: .......................................................... 1

STATEMENT OF THE CASE ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................. 3

REPLY TO APPELLANT'S FIRST POINT OF ERROR ............................................. 3

**I.** **The trial court was within her discretion to deny the appellant's motion to suppress the traffic stop.** ...............................................................................3

**a.** **Standard of Review** .............................................................................3

**b.** **There was reasonable suspicion to conduct a traffic stop of the appellant's vehicle.** ......................................................................................4

PRAYER ................................................................................................................... 12

CERTIFICATE OF COMPLAINCE ........................................................................... 13

CERTIFICATE OF SERVICE ................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**

*Crain v. State,*
315 S.W.3d 43 (Tex. Crim. App. 2010)……………………………….........9, 10

*Derichsweiler v. State,*
348 S.W.3d 906 (Tex. Crim. App. 2011)…………………………………..3-6

*Hime v. State,*
998 S.W.2d 893 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd.)……….5, 9

*Johnson v. State,*
444 S.W.3d 209 (Tex. App.—Houston [14th Dist.], pet. ref'd). …………….3-7

*Pipkin v. State,*
114 S.W.3d 649 (Tex. App.—Fort Worth 2003, no pet.)………………....3, 4, 8

*State v. Ballard,*
987 S.W.2d 889 (Tex. Crim. App. 1999)…………………………………4

**RULES**

Tex. R. App. P 9.4(i)…………………………………………………..…13

**CONSTITUIONAL PROVISIONS**

U.S. Const. amend I.V.

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The appellant was charged by information with driving while intoxicated on August 28, 2014. (1 CR at 6). The appellant filed a motion to suppress the traffic stop on March 13, 2015. (1 CR at 23-24). A hearing on the motion to suppress took place on April 28, 2015. (3 RR at 42). The trial judge denied the appellant's motion to suppress the traffic stop. (3 RR at 42). A jury trial followed, and the appellant was found guilty of driving while intoxicated. (1 CR at 41-42). The appellant was sentenced to 180 days in the county jail, probated for twelve months, and a $500 fine. (1 CR at 41-42).

## STATEMENT OF FACTS

On August 28, 2014, at 12:04 AM, Officer Alberto Galvin received a dispatched call from a resident located in the residential area between Orchard Mountain Drive and Roaring Rapids. (3 RR at 7, 4 RR at 13). The resident reported he witnessed a suspicious light-colored small truck circling the area. (3 RR at 6). Specifically, the resident said the truck had circled three times in the last ten minutes. (3 RR at 6). The caller gave his contact information, name, and location to Officer Galvin. (3 RR at 12-13).

1

Officer Galvin, a nineteen-year veteran with the Pasadena Police Department, had been stationed on patrol in that exact area since January 2014. (3 RR at 5, 4 RR at 12). This area was known to have a significant level of criminal activity, including instances of burglaries, trespassing, criminal mischief, and accidents. (3 RR at 9, 4 RR at 12, 42). Officer Galvin testified there had been reports of similar incidents occurring in the area in August of 2014. (4 RR at 42-3).

At approximately 12:05 AM, within a minute of the call, Officer Galvin reported to the residential area. (3 RR at 8, 13). When he arrived at the intersection of Orchard Mountain Drive and Roaring Rapids, he observed a tan-colored Chevrolet pick-up proceeding to make a turn. (3 RR at 14). It was the only vehicle on the street at the time, and it was within 100 yards from the location of the caller. (3 RR at 15, 4 RR at 14, 42). Therefore, Officer Galvin initiated an investigative stop to affirm or dispel the report because this was suspicious activity and raised indications that the driver could be "casing homes" and "possibly looking to burglarize". (3 RR at 28, 4 RR at 43).

Officer Galvin identified the appellant as the driver of the vehicle. (3 RR at 6, 44 RR at 14). During the stop, Officer Gavin observed the appellant with red-watery eyes, and he reeked of alcohol. (4 RR at 15). The appellant was later charged with driving while intoxicated. (1 CR at 6).

2

## SUMMARY OF THE ARGUMENT

The trial court was within her discretion to deny the appellant's motion to suppress because there were specific and articulate facts that gave rise to support reasonable suspicion. As a result, the traffic stop performed by Officer Galvin did not violate the Fourth Amendment. And, therefore, this Court should affirm the trial court's ruling that there was reasonable suspicion to support the stop of the appellant's vehicle.

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

In his sole point of error, the appellant argues the trial court abused their discretion in denying his motion to suppress because there were insufficient facts to establish reasonable suspicion to conduct a stop.

### I. The trial court was within their discretion to deny the appellant's motion to suppress the traffic stop.

#### a. Standard of Review

The Court should review the trial court's ruling on an abuse of discretion. *Pipkin v. State*, 114 S.W.3d 649, 652 (Tex. App.—Fort Worth 2003, no pet.). When reviewing a trial court's decision on a motion to suppress, this Court should apply a bifurcated standard of review, giving total deference to the trial court's findings of facts and review the court's application of the law *de novo*. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011). The trial court is the sole trier of the

3

credibility of the witness and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). In reviewing the trial court's decision an appellate court views the evidence in the light most favorable to the trial court's ruling. *Id.* The reviewing court shall not disturb supported findings of fact absent an abuse of discretion. *Id.* Therefore, the court should address the question of whether the trial court properly applied the law to the facts. *Id.*

**b. There was reasonable suspicion to conduct a traffic stop of the appellant's vehicle.**

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. CONST. amend I.V. Under the Fourth Amendment, a temporary detention of a person may be justified by mere reasonable suspicion because there is a significantly lesser intrusion upon the privacy and integrity of the person than a custodial arrest. *Derichsweiler*, 348 S.W.3d at 916. Reasonable suspicion is met when there are "specific, articulable facts that, combined with rational inferences from those facts, would lead [the officer] reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* at 914. This is an objective standard that looks to the totality of the circumstances. *Johnson v. State*, 444 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.], pet. ref'd). Therefore, reasonable suspicion is dependent upon both the content of the information possessed by the officer and its degree of reliability. *Pipkin*, 114 S.W.3d at 654 (*quoting Alabama v. White*, 496 U.S. 325, 329 (1990)).

4

In the situation where a citizen-informant provides information regarding suspicious conduct to officers, the information is presumed reliable when the citizen-informant identifies himself to the officers and may be held accountable for the accuracy and veracity of the report. *Derichsweiler*, 348 S.W.3d at 914-15. The only question then is "whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Id.* at 915. Here, the reliability of the caller is not at issue. *See Id.*; *See also Hime v. State*, 998 S.W.2d 893, 895-96 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd.) (holding the reliability of the citizen's report is inherent when the private citizen identifies himself by name).

The facts known to the investigating officer need not point to a particular and identifiable criminal offense. *Id.* In other words, the requirement that there is some indication that the unusual activity is related to a crime does not mean that a particular criminal offense must be imminent. *Johnson*, 444 S.W.3d at 214. It is only necessary for the information to be sufficiently detailed and reliable to suggest something of an apparently criminal nature is brewing. *Derichsweiler*, 348 S.W.3d at 917. An officer may have a "close call", but as long as the information amounts to more than a mere hunch, then there will be enough to satisfy the standard of reasonable suspicion. *Johnson*, 444 S.W.3d at 214. Therefore, the facts must only show that "an unusual

5

activity occurred, suggest a connection between the detainee and the unusual activity, and provide some indication the unusual activity is related to a crime." *Id.*

The appellant contends that, when a citizen calls and reports innocuous activity, that does not give rise to reasonable suspicion. However, precedent suggests an investigative detention can be justified, even when the conduct of the detainee appeared innocent in nature. *See Derichsweiler,* 348 S.W.3d at 917 (holding there was reasonable suspicion when a citizen-informant reported a man driving around a parking lot and staring into vehicles). Therefore, the question is not whether the conduct is innocent or criminal; it is whether there is any suspicion that attaches to the conduct. *Id.* In the present case, the suspicious activity was when the appellant was noticed circling the neighborhood and, specifically, was observed circling at least three times in ten minutes. While this seems innocent in nature, the fact that it was done after midnight and in an area of high criminal activity, attaches the suspicion that the appellant was "casing" houses in the neighborhood.

The following case presents an instructive example of when a stop is justified by reasonable suspicion. In *Johnson*, a resident of an apartment complex called 911 to report suspicious activity of an individual watching people and cars in the parking lot. *Johnson*, 444 S.W.3d at 211. The caller provided a physical description of the individual and the person's location near the leasing office of the complex. *Id.* Within thirty minutes, an officer arrived at the complex where he had previously responded to

robberies. *Id.* He noticed a running car with its lights turned on that was backed into a parking spot in front of the leasing office. *Id.* He also was able to identify the man in the front seat as matching the description provided by the caller. *Id.* Further, he recognized from his experience that the man was parked in the same manner in which a getaway car would be parked. *Id.* Therefore, he initiated a search and found marijuana. *Id.*

The court in *Johnson* ruled this search was justified by reasonable suspicion for three reasons. *Id.* at 215. First, the evidence raised suspicions of unusual activity because there was a reliable 911 call about the suspicious person watching people and cars near the leasing office. *Id.* Second, there was a proven connection between the reported unusual activity and the detainee because the man matched the description and was in the same location provided by the informant. *Id.* And, finally, the unusual activity was somehow related to a crime because the officer had knowledge and experience of the past robberies and articulated the detainee's vehicle was parked like a typical getaway car. *Id.* The court held it did not matter that the reported conduct appeared innocent in nature because when viewed objectively and in the aggregate there was a realistic possibility of criminal motive. *Id.* at 214. Therefore, given the totality of the circumstances, the officer was justified to conduct an investigative detention. *Id.* at 215.

The present case is significantly analogous to the *Johnson* case and, therefore, this Court should find there was reasonable suspicion to justify the stop of the appellant's vehicle. First, like the report by the caller in *Johnson*, this report was by a reliable and identifiable citizen-informant. The citizen-informant gave a description of the vehicle as a light-colored truck circling the residential area. This call was evidence that established unusual activity taking place in the residential area, like the call in *Johnson*. Further, our informant articulated a specific fact that the truck had circled the neighborhood three times in the last ten minutes. The informant also provided a location of where he saw the vehicle last circle the residential area. Therefore, the call established that unusual and suspicious activity was taking place in the neighborhood.

Second, there was a connection found between the appellant and the unusual activity. When there is a reliable and identifiable citizen-informant, less corroboration is needed by the officer. *Pipkin*, 114 S.W.3d at 651. In this case, Officer Galvin was able to match the appellant's vehicle to the description provided by the citizen-informant. Further, this was corroborated because there were no other cars on the street. Also, like the officer in *Johnson*, Officer Galvin first saw the vehicle at the intersection near the location provided by the citizen-informant and noticed the vehicle turning from Orchard Mountain Drive onto Roaring Rapids, possibly to make another circle or having just finished completing a circle of the area for a fourth time. Therefore, Officer Galvin was able to make an objective and rational conclusion that

the appellant's vehicle was the one associated with the unusual conduct relayed by the citizen-informant.[1]

Finally, the unusual activity reported by the citizen-informant was related to the crime of burglary because there was the suspicion that the appellant could have been canvassing houses. The informant reported that the appellant's vehicle had circled the residential area at least three times in the last ten minutes. This activity occurred around midnight in a residential area. Further, like the officer in *Johnson*, Officer Galvin testified that he was stationed on patrol in that exact area for a year, and the area was known for burglaries. Therefore, the officer's stop of the appellant's vehicle was based off a reasonable suspicion that the appellant soon would be engaged in criminal activity.

Further, the appellant's reliance on *Crain v. State* is misplaced. In *Crain*, the defendant was merely walking down a street at midnight in a residential area in which burglaries occurred. *Crain v. State*, 315 S.W.3d 43, 46 (Tex. Crim. App. 2010). When the officer passed the defendant in his squad car the defendant "grabb[ed] at his waist". *Id.* At that point, the officer initiated a stop on the defendant. *Id.* The officer testified that he became suspicious merely because the appellant was walking in the residential area late at night. *Id.* at 53. The court ruled time of day and level of criminal

---

[1] *See Hime v. State*, 998 S.W.2d 893, 895-96 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd.) (holding the officer was justified in making the stop when he matched the description of the appellant's vehicle and location to that of the witness's report).

9

activity in an area are just factors to be considered when determining whether there was reasonable suspicion. *Id.* The court held "in order for these facts to affect the assessment of the suspect's actions, the surroundings must raise a suspicion that the particular person is engaged in illegal behavior." *Id.*

In the present case, the officer did not rely solely on the time of day and level of criminal activity in the residential area. In fact, unlike the officer in *Crain*, Officer Galvin received a report from the reliable citizen-informant, which articulated a specific fact about the appellant and used this report as the main piece of information to establish reasonable suspicion. The report was corroborated by Officer Galvin when he saw the appellant's vehicle – matching the description provided by the citizen-informant – in the location of the call. The time of day and the criminal activity just raised his suspicions, unlike the officer in *Crain* who solely relied on those two factors to initiate the stop. Therefore, the officer followed the standard set out under the Fourth Amendment and established reasonable suspicion prior to initiating the stop of the appellant's vehicle.

Based on the totality of the circumstances, including Officer Galvin's nineteen years of experience, there was reasonable suspicion to initiate an investigative stop of the appellant. First, Officer Galvin received a reliable call from an identifiable citizen-informant. Second, the citizen-informant relayed that a light-colored pick-up truck had circled the residential area three times in the last ten minutes. This was the

specific and articulable fact that established unusual and possibly criminal activity would soon occur because it was conduct that suggested the person was "casing" houses to possibly burglarize. Third, Officer Galvin corroborated the report when he saw the appellant's vehicle – matching the description provided by the citizen-informant – approximately 100 yards from the caller's residence. And Officer Galvin noticed the car turning back onto Roaring Rapids Drive, which further suggested the appellant's vehicle was connected to the caller's report. And, finally, this all occurred after midnight in a residential area that was known to Officer Gavin to have incidents of burglaries. Therefore, this Court should find the traffic stop did not violate the Fourth Amendment because reasonable suspicion was established.

## PRAYER

The State of Texas respectfully urges the Court to overrule appellant's sole point of error and affirm his conviction.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ **Alan Curry**

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 05263700
curry_alan@dao.hctx.net

## CERTIFICATE OF COMPLAINCE

The undersigned attorney certifies that this computer-generated document has a word count of 2,945, based upon the representation provided by the word processing program that was used to create the document. TEX. R. APP. P 9.4(i).

/s/ **Alan Curry**

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
TBC No. 05263700
curry_alan@dao.hctx.net

13

## CERTIFICATE OF SERVICE

The State will mail a copy of the foregoing instrument to appellant's attorney at the following address:

Dan Krieger

215 East Galveston Street

League City, TX 77573

/s/ **Alan Curry**

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 05263700
curry_alan@dao.hctx.net